[Cite as *Popa v. State Med. Bd. of Ohio*, 2026-Ohio-2499.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Carmen Popa, M.D., :

      Appellant-Appellant, : No. 25AP-506
(C.P.C. No. 25CV-271)

v. :

      (REGULAR CALENDAR)

State Medical Board of Ohio, :

      Appellee-Appellee. :

D E C I S I O N

Rendered on June 30, 2026

**On brief:** *Carmen Popa*, pro se. **Argued:** *Carmen Popa*.

**On brief:** [*Andy Wilson*], Attorney General, *Daniel G. Wilson*, and *Kyle C. Wilcox*, for appellee. **Argued:** *Kyle C. Wilcox*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Appellant, Carmen Popa, M.D., appeals the decision and entry of the Franklin County Court of Common Pleas affirming the January 8, 2025 entry of order of the State Medical Board of Ohio ("board"). For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Dr. Popa is a native of Romania and received her medical degree in 1995. In 1998, she moved to the United States and received a license to practice medicine and surgery in Ohio in 2001. Dr. Popa opened a medical practice in 2002 and, at the time of this matter, was the sole physician covering four locations in the Cleveland area.

{¶ 3} On June 23, 2022, Dr. Popa was in the secured physicians' lounge at a local hospital when she asked Dr. Salem Noureldine, a fellow physician, for assistance with a

computer. Dr. Noureldine helped Dr. Popa and then left the lounge to conduct rounds. Dr. Noureldine left his surgical loupes in a case next to the computer he had been using, as was his practice. His name was engraved on both the surgical loupes and the case. Dr. Popa testified that she had noticed Dr. Noureldine leave his surgical loupes many times.

{¶ 4} After Dr. Noureldine had left, Dr. Popa walked over to the computer workstation, opened the case, and removed the surgical loupes. She tried them on, closed the case, placed the case back in the same spot, and put the surgical loupes in the pocket of her white coat. Dr. Popa left the hospital with the surgical loupes and placed them in her car. Dr. Popa's actions in the lounge were captured on video.

{¶ 5} Dr. Noureldine returned 20 minutes later and found his surgical loupes missing. He reported the theft to hospital police after he was unable to locate them. The police reviewed the surveillance video and questioned Dr. Popa, who admitted that she took the surgical loupes with the intent to take them to her optometrist to check the prescription and then return them. Dr. Popa characterized the theft of the surgical loupes as merely wrongful borrowing. Dr. Noureldine was unable to perform surgery on several patients without his surgical loupes, but a partner was able to do the surgeries. The surgical loupes were then returned to Dr. Noureldine a few days later.

{¶ 6} The hospital convened a meeting of the executive committee in response to the theft. Dr. Popa resigned her hospital privileges and subsequently admitted to the board that she took the surgical loupes.

{¶ 7} Dr. Popa inappropriately treated nine patients for weight loss, obesity, and conditions related to body mass index with schedule II stimulants in violation of Adm.Code 4731-11-03, and falsely documented that the medication was prescribed to treat other conditions. She testified at the board hearing that she did not know until 2022 that prescribing schedule II stimulants for weight loss was prohibited and admitted that she violated board rules for prescribing them. Dr. Popa failed to follow board rules for checking the Ohio Automated Rx Reporting System ("OARRS"), in violation of Adm.Code 4731-11-11.

{¶ 8} On September 13, 2023, the board issued a notice of opportunity for a hearing in case No. 23-CRF-0177 regarding the theft of the surgical loupes and an allegation of improper prescription of schedule II stimulants and improper documentation.

{¶ 9}   Dr. Popa was scheduled to appear at a deposition on October 20, 2023. At 4:00 p.m. on October 19, 2023, Dr. Popa contacted the board and requested to reschedule the deposition because she had just retained new counsel, Attorney Kenneth Martin. Attorney Martin was copied on the email.  The board quickly replied and requested Attorney Martin enter his appearance.

{¶ 10} The board contacted Dr. Popa's counsel of record, Attorney Walter Ehrnfelt, who was unaware that Dr. Popa hired new counsel and stated he had planned to travel to Columbus for the deposition.  The board then sent an email to Attorney Martin and Attorney Ehrnfelt confirming the deposition would not be rescheduled and that Dr. Popa would be charged with failure to cooperate in an investigation if she failed to appear.

{¶ 11} Dr. Popa did not appear for the October 20, 2023 deposition, and neither attorney appeared on her behalf.  The board never received a withdrawal of counsel from Attorney Ehrnfelt or a notice of appearance from Attorney Martin.

{¶ 12}  On September 22, 2023, the board issued a subpoena to Dr. Popa requesting patient and billing records for eight patients be provided by October 12, 2023.  Dr. Popa did not produce any documents by the due date.  On November 8, 2023, the board issued another notice of opportunity for a hearing in case No. 23-CRF-0217 regarding Dr. Popa's failure to appear at a deposition before the board and failure to produce records requested by the board.  On November 27, 2023, Dr. Popa provided the patient records, but did not provide the billing records until February 2024.

{¶ 13}  On January 10, 2024, the board issued a third notice of opportunity for a hearing in case No. 23-CRF-0007 regarding improper prescription of schedule II stimulants and improper documentation involving eight patients and Dr. Popa's failure to contact a patient's prior treating physician and improper documentation.  The three cases were consolidated for purposes of hearing.

{¶ 14}  The board convened a hearing on July 16, 2024, and the hearing examiner's report and recommendation to permanently revoke her license to practice medicine and surgery in Ohio was sent to Dr. Popa on December 16, 2024.  Dr. Popa filed objections on December 23, 2024.  On January 8, 2025, the board adopted the hearing examiner's report and recommendation and issued Dr. Popa the order permanently revoking her medical license and fining her $20,000.

{¶ 15} Dr. Popa filed a notice of appeal with the Franklin County Court of Common Pleas, pursuant to R.C. Chapter 119, on January 25, 2025.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Dr. Popa assigns the following as trial court errors:

> 1. The Court of Common Pleas erred in affirming a disciplinary penalty that was excessive and disproportionate to the alleged violations.
>
> 2. The lower court improperly upheld the Board's reliance on EMR deficiencies beyond Appellant's control.
>
> 3. The decision below failed to account for apparent bias and retaliatory intent in the Board's enforcement.
>
> 4. The lower court disregarded mitigating factors that the Board failed to weigh.
>
> 5. The court erred in sustaining the Board's finding that Appellant lacked remorse, despite record evidence to the contrary.

## III. STANDARD OF REVIEW

{¶ 17} When reviewing an order of the board, a trial court must consider the record to determine whether reliable, probative, and substantial evidence supports the board's order and whether the order is in accordance with law. R.C. 119.12(M). *See also Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108 (1980). If the trial court makes such a finding, it is "precluded from interfering or modifying the penalty which the [board] imposed, so long as such penalty is authorized by law." *DeBlanco v. Ohio State Med. Bd.*, 78 Ohio App.3d 194, 202 (1992). An appellate court's review of an administrative decision is even more limited, and we must determine only if the trial court abused its discretion, and absent such an abuse, we must affirm and not substitute our judgment for those of the board or the trial court. *Banker v. State Med. Bd.*, 2024-Ohio-6009 (10th Dist.).

## IV. LEGAL ANALYSIS

{¶ 18} Dr. Popa's five assignments of error challenge the board's decision-making process and its imposition of a harsh sanction, and essentially question whether there was reliable, probative, and substantial evidence supporting the board's permanent revocation order against her. While the assignments of error are somewhat interrelated, we shall address them out of order.

{¶ 19}  The board is vested with broad authority, under R.C. Chapter 4731, to impose a wide range of sanctions, from reprimand to permanent revocation of a medical license, depending on the nature and severity of the violation. *White v. State Med. Bd.*, 2024-Ohio-1553 (10th Dist.).  When reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. *Demint v. State. Med. Bd.*, 2016-Ohio-3531 (10th Dist.).  The board's discretion reflects deference to its expertise in regulating the medical profession. *Ridgeway v. State Med. Bd.*, 2008-Ohio-1373 (10th Dist.).  However, the sanction must be supported by appropriate evidence and be proportionate to the prohibited acts committed by the physician. *Azher v. State Med. Bd.*, 2008-Ohio-3102 (10th Dist.).

{¶ 20}  This court has held that medical board cases must be affirmed "based largely on the simple determination that the trial court did not abuse its discretion in finding that the [board's] decisions were supported by reliable, probative, and substantial evidence." *Yoonessi v. State Med. Bd. of Ohio*, 2024-Ohio-169 (10th Dist.).  The evidence here demands the same result.

{¶ 21}  Dr. Popa alleges in her second assignment of error that the trial court erred when it upheld the board's finding that she improperly documented the use of schedule II stimulants.  Dr. Popa contends that the improper documentation was the result of malfunctions in her electronic medical record system, and that the board should not elevate violations caused by technical flaws to unprofessional conduct.  We disagree.

{¶ 22}  Dr. Popa was alleged to have prescribed several patients schedule II stimulants for weight loss, but the medications were not approved for weight loss or obesity treatment.  In some cases, Dr. Popa documented that the medication was prescribed to treat other conditions, but the board determined the diagnoses were a pretense to conceal the fact that the medications were prescribed for weight loss.

{¶ 23}  Dr. Popa was also required to obtain and review an OARRS report after controlled medications are prescribed for more than 90 days and to document review of the OARRS in the patients' medical records.  Adm.Code 4731-11-11(F).  The board had previously warned Dr. Popa of her failure to properly use OARRS and encouraged her to abide by the proper procedures.  When challenged during the investigation, Dr. Popa

admitted the violation but shifted blame to a software issue. However, it is Dr. Popa's duty to properly document a patient's medical record, and she failed to do so.

{¶ 24} Dr. Popa argued that her actions regarding the prescribing of schedule II stimulants were legitimate attempts to address severe obesity and comorbidity of her patients. While acknowledging the improper prescriptions, Dr. Popa emphasized that her patients did lose weight. She contends she checked OARRS but inadvertently failed to document that she checked OARRS. Dr. Popa asserted that her electronic medical record system displayed contradictory descriptions on auto-populated text and drop-down boxes. She also stated that a software change impacted reporting and documentation.

{¶ 25} The record supports the board's conclusions regarding Dr. Popa's prescribing schedule II stimulants for weight loss and associated documenting errors, and Dr. Popa admitted to the violations. Dr. Popa's second assignment of error is overruled.

{¶ 26} Dr. Popa argued in her third assignment of error that the hospital was biased and acted against her by investigating the theft of the surgical loupes from the private and secured physicians' lounge. However, Dr. Popa has offered nothing to substantiate her claims.

{¶ 27} Due process requires that an individual in an administrative proceeding is entitled to a fair hearing before an impartial tribunal. *Serednesky v. Ohio State Bd. of Psychology*, 2006-Ohio-3146 (10th Dist.). The board's determination is presumptively valid, and an appellant must demonstrate specific facts showing the board members were "biased, partial or prejudiced to such a degree that [their] presence adversely affected the board's decision." *Althof v. Ohio State. Bd. of Psychology,* 2007-Ohio-1010, ¶ 35 (10th Dist.). Disagreement with the board's decisions does not constitute evidence of bias. *King v. Divoky*, 2021-Ohio-1712 (9th Dist.).

{¶ 28} Dr. Popa testified that she thought the surgical loupes were communal and believed that once the surgical loupes were returned, the case was closed. However, the hospital had concerns about Dr. Popa's behavior and convened its executive committee to address the issue. The hospital police referred the results of its investigation to the local police department. A local television station aired the story, but Dr. Popa offered no proof that the hospital was involved.

{¶ 29} "It is settled law that an appellate court must presume the decision of an administrative agency is valid and was reached in a proper manner." *In re Christian Home for Aged, Inc.*, 1988 Ohio App. LEXIS 3145 (10th Dist. Aug. 4, 1988). Dr. Popa has not demonstrated any specific bias or retaliation, and her third assignment of error is overruled.

{¶ 30} Dr. Popa's fourth assignment of error contends the board disregarded mitigating factors. However, the board properly considered the information before it and arrived at a decision to permanently revoke Dr. Popa's medical license. The record reflects the decision is supported by sufficient evidence. Dr. Popa argued that the board ignored mitigating factors, such as her welcoming oversight and corrective action. There is no evidence that the board did not consider the mitigating factors; instead, the board simply did not find them to be mitigating/compelling. Because the mitigation was not accepted does not mean the factors were not considered. *State v. Davis*, 62 Ohio St.3d 326 (1991). Dr. Popa's fourth assignment of error is overruled.

{¶ 31} In her fifth assignment of error, Dr. Popa argues that the trial court erred by upholding the board's conclusion that she demonstrated a lack of remorse. Dr. Popa does not, however, identify the location of the error in the record, and the term "remorse" is not included in the hearing examiner's report and recommendation. App.R. 16(A)(2).

{¶ 32} The issue of remorse was not addressed in the trial court, and is waived on appeal. *Lundeen v. State Med. Bd. of Ohio*, 2013-Ohio-112 (10th Dist.). However, we must note that the board never made a finding that Dr. Popa did not show remorse. The hearing examiner noted in her report that Dr. Popa testified she was ashamed of her actions. If Dr. Popa is contending that the absence of any reference to remorse means the board did not consider it, that argument fails. *State v. Bailey*, 2007-Ohio-455 (9th Dist.). Dr. Popa's fifth assignment of error is overruled.

{¶ 33} Dr. Popa argues in her first assignment of error that the sanction of permanent revocation was harsh and grossly disproportionate to her misconduct and comparable disciplinary cases. The state argued that the sanction was permitted by and fully supported by the evidence, and there is no basis for the trial court to modify the sanction.

{¶ 34} Dr. Popa failed to appear for a deposition and failed to produce subpoenaed records. The record indicates that Dr. Popa was scheduled for a deposition on October 20, 2023, and she attempted to reschedule the deposition at 4:00 p.m. on October 19, 2023. The board denied Dr. Popa's request and informed her that she would be charged with failure to cooperate in an investigation if she failed to appear. Neither Dr. Popa nor her counsel appeared for the deposition.

{¶ 35} The trial court reviewed the entire record and determined that the board relied on legally sufficient evidence in reaching its decision. Dr. Noureldine testified that his stolen surgical loupes were custom fitted, and the replacement cost was $1,665. The value of the glasses " 'is the cost of replacing the property with new property of like kind and quality.' " *State v. Parsons*, 2007-Ohio-1204, ¶ 23 (10th Dist), quoting R.C. 2913.61(D)(2). It is clear that Dr. Popa appropriated Dr. Noureldine's surgical loupes with purpose not to give proper consideration in return and without any justification for not giving such consideration. R.C. 2913.01(C)(3). Dr. Popa's intent to return the items, even if believed, is not a determinative factor and we find her argument that the evidence did not show she intended to permanently deprive Dr. Noureldine of his belongings to be without merit. *State v. Davis*, 2007-Ohio-1131 (9th Dist.).

{¶ 36} The board heard testimony from Dr. Popa that included her admission to the theft, and was free to disbelieve her statements or surmise what would have happened to the surgical loupes had the hospital police not gotten involved.

{¶ 37} The board members also weighed in. Ms. Montgomery was troubled that Dr. Popa was not bothered that she was not aware of the board's rules on prescribing controlled substances. Dr. Soin had difficulty understanding Dr. Popa's conduct regarding taking the surgical loupes. Dr. Feibel opined that while each violation could be individually reconciled, the totality of the violations was overwhelming. He stated that the video of the theft persuaded him to support permanent revocation, and Dr. Popa's mitigating issues were not enough.

{¶ 38} Dr. Popa relied on cases to support her claim that the sanction was harsh and unreasonable. A claim of disproportionate penalty may also arise under constitutional grounds, such as discriminatory or selective enforcement. However, the fact that another physician received a lesser sanction for a similar offense is not sufficient to establish a claim

unless there is evidence of discriminatory enforcement. *Abunku v. State Med. Bd.*, 2012-Ohio-2734. The Ohio State Board of Emergency Medical Services revocation of a firefighter's emergency medical technician's license, who pled no contest to a misdemeanor charge of sexual imposition, was upheld although the appellate court noted the sanction appeared to be harsh but nonetheless authorized by law. *Jaros v. Ohio St. Bd. of Emergency Med. Servs.*, 2002-Ohio-2363 (6th Dist.). The board permanently revoked a doctor's license who made false statements during his bar application process. *Hayes v. State Med. Bd.*, 138 Ohio App.3d 762 (10th Dist. 2000).

{¶ 39} The board has broad discretion in fashioning a sanction, and the hearing examiner noted that she considered a number of sanctions before recommending permanent revocation and a fine. A violation may call for different degrees of sanctions under different circumstances, and the board should select that sanction which most appropriately fits the violation, in the context of the case. *Klickovich v. State Med. Bd. of Ohio*, 2025-Ohio-2783 (10th Dist.). The appropriateness of the choice is reviewable to the extent that an abuse may have occurred in the exercise of the board's discretion in the selection of the sanction. *Instanbooly v. Ohio State Med. Bd.*, 2004-Ohio-3696 (10th Dist.).

{¶ 40} Commission of an act that would constitute a felony is subject to a maximum penalty of permanent revocation. State Med. Bd. of Ohio Disciplinary & Fining Guidelines, Category VIII(D). Based on our review of the evidence and testimony presented at the board hearing, we cannot conclude that the trial court abused its discretion. The board's decision is supported by reliable, probative, and substantial evidence, and the sanction of permanent revocation is lawful. We may not modify a sanction authorized by statute. *Shah v. State Med. Bd. of Ohio*, 2014-Ohio-4067 (10th Dist.). Dr. Popa's first assignment of error is overruled.

**V. CONCLUSION**

{¶ 41} After reviewing the record, we conclude that the trial court did not abuse its discretion when it found the board's order was in accordance with the law. The board relied on legally sufficient evidence in concluding that Dr. Popa was not fit to hold a license to practice medicine and surgery in Ohio.

{¶ 42} Having overruled Dr. Popa's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BOGGS, P.J., and DINGUS, J., concur.

_____